NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| JOSE MATEO ALCANTARA, | : | |
| | : | |
| Petitioner, | : | Civ. No. 08-0451 (GEB) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | **MEMORANDUM OPINION** |
| | : | |
| Respondent. | : | |
| | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion of *pro se* petitioner Jose Mateo Alcantara ("Petitioner" or "Mr. Alcantara") to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth in this Memorandum Opinion, issued without oral argument pursuant to Federal Rule of Civil Procedure Rule 78, Petitioner's motion is denied.

**I.    BACKGROUND**

On July 19, 2006, petitioner Jose Mateo Alcantara was charged with one count of "conspiracy to distribute and possess with intent to distribute 100 or more grams of heroin," contrary to 21 U.S.C. §§ 841(a) and (b)(1)(B)(i), in violation of 21 U.S.C. § 846. (Gov't Opp'n, Ex. 1 at 1.) On March 26, 2007, Mr. Alcantara pled guilty to the single count pursuant to a plea agreement (the "Agreement") with the United States dated November 1, 2006 and signed on January 11, 2007. (Id. Ex. 1 at 1-5, Ex. 4 at 1.) Petitioner was sentenced on July 2, 2007 to a term of 51 months imprisonment, followed by supervised release for a period of four years. (Id.

1

Ex. 2 at 6:7-13.) On January 25, 2008, Mr. Alcantara timely filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner argues that his Sixth Amendment rights were violated by an ineffective counsel who: (1) failed to appeal his sentence despite Petitioner's express request, and (2) failed to argue for an additional downward departure in his sentence during the plea agreement colloquy. (Petr.'s Br. 1.)

**II.    DISCUSSION**

A prisoner in federal custody may file a motion in the trial court challenging the validity of his sentence under 28 U.S.C. § 2255. Section 2255 permits a court to vacate, correct or set aside a sentence if it was imposed in violation of the Constitution or laws of the United States, if it was in excess of the maximum authorized by law, or if it is otherwise subject to collateral attack. 28 U.S.C. § 2255. Given the *pro se* status of the petitioner, the Court will construe the motion liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). The issue in the instant case is whether the Petitioner may collaterally attack his sentence, despite clearly acknowledging that the terms of his plea agreement expressly forbade subsequent collateral attacks so long as his sentence was within certain statutory guidelines. The Court finds that Mr. Alcantara may not do so, and his § 2255 motion is accordingly denied.

>    **A. The Two-Prong Test From Khattak Upholds The Validity Of Petitioner's Waiver Of Appeal**

In United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001), the Third Circuit developed a two-prong test to determine the validity of a waiver of appeal. The first prong requires the court to determine whether the waiver was entered into "knowingly and voluntarily." Id. The second prong requires that the court assess whether enforcement of the waiver would

result in a "miscarriage of justice." Id. The Third Circuit has ruled that if the waiver satisfies both prongs of the Khattak test, then it will be enforced and it will preclude the court from reviewing the merits of the appeal. Id. at 561. As the court in Sanpietro v. United States, No. 03-5550, 2006 U.S. Dist. LEXIS 88693 (D.N.J. Dec. 5, 2006) wrote:

> to hold otherwise would render such a waiver agreement essentially meaningless and would result in a mockery of the judicial system by affording criminal defendants the benefits of plea agreements, while shielding them from their own promises made under such agreements.

Id. at *18. Accordingly, the Court will apply the two-pronged Khattak test in determining the merits of Mr. Alcantara's § 2255 motion.

### B. The First Prong Of The Test is Satisfied Because Petitioner Knowingly And Voluntarily Entered Into The Plea Agreement.

To satisfy the first prong of the Khattak test, the Court must determine whether Mr. Alcantara entered his guilty plea voluntarily and with sufficient knowledge that he was waiving his right to collaterally attack his sentence so long as it fell within certain statutory guidelines. Throughout the criminal proceedings in this case, the Petitioner has recognized that his Agreement with the Government would restrict his ability to appeal. First, Mr. Alcantara signed the March 26, 2007 Plea Application, which shows that he understood that under certain circumstances he was waiving his right to appeal or collaterally attack the sentence imposed on him. (Gov't Opp'n, Ex. 3 at 6.) The Petitioner and his attorney also signed the Agreement which demonstrates Mr. Alcantara's full understanding of the terms and conditions of the deal. Indeed, the Agreement explicitly states that:

> Jose Mateo Alcantara knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ

3

> or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the guidelines range that results from a total Guidelines offense level of 23.

(Id. Ex. 1 at 7.) The Agreement also states that "if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so." (Id. at 8.)

At his March 26, 2007 Plea Hearing, the Petitioner further acknowledged that the Agreement was translated into Spanish for him and that he fully understood and accepted the terms and conditions set forth in the letter. (Id. Ex. 4 at 12:19-13:6.) Mr. Alcantara also accepted that "if [he was] sentenced within or below the advisory guidelines range that the parties [had] agreed to as part of the stipulation...[he] would waive any appeal or ability to attack by post-conviction review his conviction or sentence." (Id. at 14:6-16.) Since he was in fact sentenced within the statutory guidelines range as stipulated by the parties, the waiver is effective and becomes binding for both parties. (Id. Ex. 2 at 5:17-21, 6:10-11.)

In light of this record, the Court finds that the Petitioner was fully aware of the rights that he was surrendering by entering into the Agreement with the Government. There is no evidence to suggest that Mr. Alcantara misunderstood the Agreement or that any of the documents were signed involuntarily. Additionally, the Petitioner stated in open court that he was not forced or coerced into accepting the Agreement. (Id. Ex. 4 at 5:20-6:6.) Even in his *pro se* petition to the court, Mr. Alcantara does not allege that he involuntarily or unknowingly entered his plea. Therefore, the Petitioner must be deemed to have agreed to the waiver knowingly and voluntarily, which satisfies the first prong of the Khattak test.

### C. The Enforcement Of The Waiver Will Not Result In A Miscarriage Of Justice, So The Waiver Of Appeal Should Be Upheld.

The second prong of the Khattak test requires the court to consider whether enforcement of the waiver would result in a "miscarriage of justice." The Third Circuit has held that courts should take into consideration:

> [t]he clarity of the error, its gravity, its character (e.g. whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

Khattak, 273 F.3d at 563, *quoting* United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001). The Khattak court insisted that the "governing standard to apply in these circumstances is whether the error would work a miscarriage of justice." Id. Applying these guidelines to the case at bar, there was no miscarriage of justice here because the defendant knowingly and voluntarily agreed to the terms and conditions of the Agreement at least three times during the course of his criminal proceedings. Notably, Mr. Alcantara does not contest this fact anywhere in his *pro se* motion.

The Court also rejects the Petitioner's argument that he has suffered a miscarriage of justice due to the ineffective assistance of counsel. The Third Circuit has recognized that ineffective assistance of counsel throughout a plea proceeding may result in a miscarriage of justice sufficient to invalidate a waiver. United States v. Shedrick, 493 F.3d 292, 298-99 (3d Cir. 2007). According to the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 694 (1984), a petitioner may prevail on a claim of ineffective assistance of counsel if the petitioner shows:

> a reasonable probability that, but for counsel's unprofessional errors, the
> result of the proceeding would have been different. A reasonable probability
> is a probability sufficient to undermine confidence in the outcome.

Additionally, the defendant must show that his counsel acted in an objectively unreasonable fashion and that counsel's performance fell below "the wide range of professionally competent assistance." Id. at 689.

### (i) Failure To Argue For Additional Downward Departure Does Not Constitute Ineffective Assistance Of Counsel

In the case at bar, Mr. Alcantara first alleges that his counsel was ineffective because he was told to "litigate before the court all the issues that would warrant him a downward departure so that [Mr. Alcantara] would not have to litigate any petition in the future," yet failed to do so. (Petr.'s Mot. at 5.)  Mr. Alcantara believes that his counsel should have argued for an additional downward departure due to the "deplorable conditions" at Passaic County Jail ("PCJ"). Id. at 5-6. This specific ground for downward departure has been recognized by the Third Circuit, and it is well established that the decision to reduce or vacate a sentence on that ground remains solely within the district court's discretion.  See United States v. Sutton, No. 07-426, 2007 U.S. Dist. LEXIS 79518, at *27-29 (D.N.J. Oct. 25, 2007); United States v. Garcia-Morena, 214 Fed. App'x 134, 137 (3d Cir. 2007) (affirming the district court's downward departure in sentencing which it granted due to the "harsh conditions of appellant's pre-trial confinement in Passaic County Jail").

Since the decision to grant a downward departure is left solely to the district judge's discretion, there is no guarantee that this particular departure for the poor conditions at PCJ would be granted in any given case.  Therefore, the alleged failure of Mr. Alcantara's counsel

6

during the plea agreement colloquy to request such an additional downward departure does not rise to the standard of professionally incompetent assistance. Furthermore, there is not a "reasonable probability" that the attorney's alleged "error" would have resulted in a different outcome for Mr. Alcantara. Strickland, 466 U.S. at 694. The Court finds that Petitioner's legal counsel was constitutionally effective during the plea negotiations, and that Mr. Alcantara was not the victim of a miscarriage of justice.

> *(ii) The Terms Of The Plea Agreement Prevent An Appeal, So The Alleged Failure To File Such An Appeal Also Does Not Constitute Ineffective Assistance of Counsel*

Mr. Alcantara also argues that his attorney's assistance was ineffective because his attorney failed to file an appeal after he entered into the Agreement and his sentence was imposed. (Petr.'s Mot. at 1.) Petitioner argues that his attorney knew he did not speak English and he trusted his counsel to file an appeal on his behalf. (Id. at 5.) Mr. Alcantara posits that his case is analogous to Roe v. Flores-Ortega, 528 U.S. 470 (2000), in which the U.S. Supreme Court found that counsel's failure to file an appeal constituted grounds for finding "ineffective assistance of legal counsel." In fact, Mr. Alcantara's interpretation of the holding in Flores-Ortega is incorrect. The Court held in that case that:

> counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal [...], or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Id. at 480. In the instant case, the Petitioner waived his right to appeal by accepting the Agreement. Mr. Alcantara was fully aware of the terms of the Agreement and he agreed to abide

by its terms and conditions.  Under these circumstances, it would not be reasonable for Mr. Alcantara's counsel to think that he wanted to appeal his sentence.  Furthermore, the Petitioner's counsel properly rejected Mr. Alcantara's request to appeal since such an appeal would violate the Agreement.  If there is an enforceable waiver in place, then "counsel's duty to protect his client's interests militates against filing an appeal."  Nunez v. United States, 495 F.3d 544, 548 (7th Cir. 2007).  Since the waiver is enforceable in the case at bar, it would have been reasonable for Mr. Alcantara's counsel to believe that serious consequences could result from a violation of the Agreement and to seek to shield him from such consequences.  The Petitioner bargained away his right of appeal in the Agreement, and his counsel made a rational decision by foregoing any effort to appeal the sentence.  Thus, the Petitioner was not the victim of a miscarriage of justice, and his motion for § 2255 relief must accordingly be denied.

### III.  CONCLUSION

For the foregoing reasons, the Court will deny Mr. Alcantara's motion.  An appropriate form of Order accompanies this Opinion.

Dated: June 16, 2008

                                         s/ Garrett E. Brown, Jr.
                                         GARRETT E. BROWN, JR., U.S.D.J.